279 So.2d 866 (1973)
Nancy HIRSCH, Petitioner,
v.
STATE of Florida, Respondent.
No. 43202.
Supreme Court of Florida.
June 20, 1973.
Rehearing Denied July 25, 1973.
*867 Clyde Ellis and Catherine Wings Slocum, of Johnson, Ellis, Slocum & Petersen, Gainesville, for petitioner.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., Tallahassee, for respondent.
MAGER, Judge.
This cause is before this Court on certiorari granted to review a decision of the District Court of Appeal, First District in Hirsch v. State, 268 So.2d 441 (Fla.App. 1973), which it is contended conflicts with the decisions of this court in Kellum v. State, 104 So.2d 99 (Fla.App. 1958), Williams v. State, 117 So.2d 473 (Fla. 1960), Findley v. State, 124 Fla. 447, 168 So. 544 (Fla. 1936), and Norris v. State, 158 So.2d 803 (Fla.App. 1963) cert. discharged 168 So.2d 541 (Fla. 1964). We have considered the cases cited for conflict and have determined that we have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution 1973, F.S.A.
Petitioner was charged with and convicted of the crime of perjury. The incidents upon which the conviction was predicated arose during a hearing on a motion for a new trial filed in connection with the prosecution of an assault case by the state against one Janice Harvey. The said Janice Harvey was convicted of aggravated assault and during the hearing on the motion for new trial petitioner allegedly falsely swore that she observed an assistant state attorney enter the jury-room at the time the jury was deliberating during the Harvey trial. The petitioner had apparently executed an affidavit in support of such allegations; because the truth of the allegations contained therein became at issue, a separate hearing was held thereon ultimately resulting in an information being filed against petitioner and her subsequent conviction.
At petitioner's trial, the state introduced evidence as follows: (1) testimony by the bailiff of the Harvey jury that the prosecutor did not enter the jury-room, (2) testimony by each of the six jurors constituting the jury panel at the Harvey trial unequivocally testifying that the prosecutor did not enter the jury-room, (3) testimony by the prosecutor himself that he did not enter the jury-room.
The state also presented the testimony of one Beverly Ann Jones (sister of the victim in the Harvey case) and Mrs. Alberta Daniels (mother of Beverly Ann Jones) which related to certain telephone conversations between the aforementioned and a person identifying herself as one Connie Canney. The substance of their testimony was to the effect that a person identifying herself as Mrs. Canney had attempted to persuade them to get witnesses at the Harvey trial to change their testimony so that Janice Harvey would not have to go to jail.
The witnesses indicated that they did not know nor had ever seen the petitioner until the time of her perjury trial. The foregoing testimony (which might reflect an attempted subornation of perjury by Mrs. Canney) was admitted into evidence at petitioner's trial, over her objection, purportedly for the purpose of suggesting that petitioner might have come under the influence of Mrs. Canney.[1]
*868 On appeal the district court, first district, affirmed the conviction finding that the aforementioned testimony was neither hearsay nor prejudicial. A comprehensive dissenting opinion was written by Judge Rawls.
In rejecting any claim of hearsay and prejudice the majority decision stated:
"It appears to us that the overriding theory of the State's case was coupling the actions of one Mrs. Connie Canney in her attempts to suborn perjury in the Harvey trial, and the influence of Mrs. Canney on the appellant thereby theorizing that the appellant, at the probable suggestion of Mrs. Canney, had committed perjury in her attempt to help Mrs. Canney to help Mrs. Canney's friend, Janice Harvey. ... Keeping in mind the State's theory, we do not consider the evidence of the collateral crimes committed by a third person, in this case, Mrs. Canney, to be either hearsay nor prejudicial in that the purpose was not to further prosecute such third person, but to show this third person's connection between her alleged illegal acts and her influence upon the otherwise innocent victim, as the appellant was, prior to the coming under the influence of Mrs. Canney. Therefore, we do not find the trial court in error in this regard, but the evidence was relevant." (Emphasis supplied.) 268 So.2d at 442.
In refuting the state's theory and the rationale of the majority decision, Judge Rawls observes in part:
"Such evidentiary predicate is more cognizable in the courts of a totalitarian power.
"The authorities are in accord that the minds of jurors must not be poisoned and prejudiced against the prisoner by receiving evidence of another collateral crime committed by a defendant not on trial. It is imperative that the issue be isolated and maintained as the `feature' of the trial. Here, the issue is crystal clear, viz.: Did Nancy Hirsch commit perjury when she swore that she saw a prosecuting attorney enter the jury room on December 18, 1969? The issue was not: `Did Mrs. Canney commit acts which constituted the crime of subornation of perjury.' Are the telephone conversations of some person with witnesses who have no connection with the defendant, or the offense charged, logically probative? I submit they are not. Thayer stated the basic concept as to relevance in its classic form:
`... The two leading principles should be brought into conspicuous relief, (1) that nothing is to be received which is not logically probative of some matter requiring to be proved; and (2) that everything which is thus probative should come in, unless a clear ground of policy or law excludes it.'"
* * * * * *
"Wharton, in his treatise on criminal evidence, sets out the rule applicable here as:
`Generally, evidence of acts of the defendant involving persons other than the victim is inadmissible as irrelevant, the basis for the exclusion being characterized as res inter alios acta.'" (Emphasis supplied.)
Upon a careful review of the record in light of the applicable judicial decisions we are of the view that the dissenting opinion of Judge Rawls has properly characterized the effect of such evidence as being hearsay and prejudicial and the cause should have been reversed for a new trial.
Any reliance upon this court's decision in Williams v. State, 110 So.2d 654 (Fla. 1959), cert. den., 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), as a basis upon which such evidence and testimony can be considered as admissible is simply misplaced. In reaffirming the rule laid down *869 in Williams this court observed in Ashley v. State, Fla. 1972, 265 So.2d 685, at p. 693:
"It is well settled in this state that evidence of other crimes is admissible if it casts light on the character of the act under investigation by showing either motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of such other crimes would have a relevant or material bearing upon some essential aspect of the offense then being tried. Williams v. State (Fla.) 110 So.2d 654. And in Williams we held that relevancy is the test and that it proffered evidence is relevant for any purpose save that of showing bad character or propensity, then it should be admitted. We also held in that case that evidence which has a reasonable tendency to establish the crime laid in the indictment is not inadmissible merely because it points to another crime. Of course, evidence which tends to show that the accused has committed other crimes wholly independent of the crime charge is irrelevant, and, therefore, inadmissible. Suarez v. State, 95 Fla. 42, 115 So. 519.
"We are equally committed to the proposition that the state in introducing testimony concerning other crimes committed by a defendant may not make such crimes a feature of the trial instead of an incident, so that the effect is to devolve from development of facts pertinent to the main issue of guilt or innocence into an attack on the character of the defendant. Williams v. State (Fla.) 117 So.2d 473."
The Williams rule simply does not apply because the case sub judice does not involve "other crimes committed by a defendant". The testimony sought to be elicited in the petitioner's trial dealt, if anything, with an alleged criminal act committed not by petitioner but rather by a third party (Mrs. Canney). See Kellum v. State, supra. The determination of the admissibility of the testimony in dispute must be resolved by a consideration of basic fundamental rules of evidence.
It is interesting to note that even under the Williams rule evidence which is relevant is inadmissible if its sole purpose is to "show the propensity of the accused to commit the instant crime charged." If the aforementioned objectionable testimony did not directly involve the petitioner and if it had no tendency to demonstrate the commission of a collateral (related) crime what purpose then could such evidence serve except to suggest a tendency, inclination, ergo propensity of the petitioner to have committed the crime for which he was charged? See Williams v. State, supra; see also Anthony v. State, 246 So.2d 600 (Fla.App. 1971).
As this court observed in Gordon v. State, 104 So.2d 524 (Fla. 1958), the essential elements of the crime of perjury are the (1) willful, (2) giving of false testimony, (3) on a material point, (4) in a judicial proceeding, (5) by a person to whom a lawful oath has been administered. Nowhere in this definition is "motive" a required element. The fact that the petitioner may have been "motivated" to commit perjury at the behest of the alleged activities of a Mrs. Canney are neither relevant, material or competent to the essential ingredients in the crime of perjury.[2]
It is also interesting and persuasive to observe that the conviction in Gordon v. State was reversed because of the admissibility of testimony bearing striking similarity in substance to the case sub judice. In Gordon the state sought to introduce testimony to show that certain "loans" were made to one King suggesting that *870 such money was either the source of funds utilized by King to bribe one Tillett, or implying the violation of the election code by King. (Gordon and King were appealing the conviction of the crime of subornation of perjury). This court observed in part at p. 535:
"... (W)e can see no materiality whatsoever between the testimony of these two witnesses and the issues involved in the trial of the appellants for perjury and subornation of perjury.
* * * * * *
"... (T)he alleged perjury simply had to do with whether Busbee and Arnold witnessed the two men at the pay-off scene and witnessed certain occurrences at the time. Whether King obtained the money from his own bank account or from some other source was totally useless and immaterial as a means of establishing any fact related to the crimes alleged in the information. The only purpose that this testimony could have served was to create a prejudice in the minds of the trial jury, based on the suggestion that King may have violated the Election Code and that, therefore, Busbee and Arnold were guilty of perjury and Gordon and King were guilty of subornation."
* * * * * *
"... The State brushes off the contention that the testimony was immaterial and prejudicial with the mere observation that it was not. Adding immaterial testimony to corroborate immaterial testimony does nothing more than compound the prejudicial effect of the error. This is obviously so because the corroboration adds greater weight to the testimony which it supports. If the testimony which is corroborated was in itself prejudicially immaterial, certainly the error is emphasized by the addition of support or corroboration of the original error."[3] (Emphasis supplied.)
The admission of the testimony in question was prejudicial and constituted reversible error. Accordingly, the decision sub judice is quashed and returned to the district court with instructions to remand to the trial court with directions that petitioner be granted a new trial.[4]
CARLTON, C.J., and ERVIN, ADKINS and BOYD, JJ., concur.
NOTES
[1] The state sought to link up petitioner with Mrs. Canney by offering testimony that Mr. and Mrs. Canney had visited the Public Defender's office inquiring whether it would be material if a witness observed the prosecuting attorney go into the jury-room. The state also introduced evidence to show that petitioner's car was seen parked in front of Mrs. Canney's house subsequent to her release on bond.
[2] The substance of the testimony in question is as Judge Rawls characterized "the rankest of hearsay", see note 4, 268 So.2d 444. The asserted relevance of the evidence was "illusory, fancied, supposititious or unsubstantial", Headrick v. State, 240 So.2d 203 (Fla.App. 1970).
[3] In summarizing its decision in Gordon v. State, supra, this court concluded in part: "(c) Reversible error was committed in permitting the witness Tillett to testify with reference to his conferences and conversations out of the hearing of any of the appellants. Many of these conversations were pure hearsay and the others mentioned in the opinion were totally immaterial to the issues involved in the trial... . (e) Reversible error was committed by allowing into evidence the testimony of witnesses Smith and Tomasello with regard to cash loans to appellant King and the sources of the money." 104 So.2d at p. 542.
[4] Inasmuch as this court has directed that a new trial be granted for those reasons set fourth in this opinion it becomes unnecessary to consider petitioner's allegation of error with respect to the trial court's denial of a jury instruction on inadvertence or mistake.