PIERCE, Chief Judge.
Appellant Carlton W. Christie appeals to this Court from a judgment and sentence to the State Prison imposed upon him by the Pinellas County Circuit Court after a jury trial which found him guilty of breaking and entering a dwelling house with intent to commit a misdemeanor.
*606 Upon appeal to this Court Christie relies for reversal principally upon the contention that evidence as to a similar-fact offense was erroneously admitted by the trial Court, and that a motion for mistrial seasonally made because of such admission was improperly denied. We affirm the conviction, but will discuss the point raised.
The State’s case was based primarily upon the following facts. A Mrs. Mary Steitz was the owner and occupant of a home located on 17th Avenue North in St. Petersburg. On March 19th, 1970, at about 11:30 A.M. she was in the back yard of her home attending to her sick husband. All the doors of her house, including the kitchen door, were shut. She was walking around to the side of the house when she saw appellant Christie backing out of the kitchen door. She picked up a rake, approached him and tried to apprehend him, but he ran and got away. On entering her home she discovered her billfold lying open in her pocketbook, which was on the floor, with $42.00 missing. At the trial she identified Christie as the man who had entered her house.
The State also produced evidence that on the very following morning, March 20th, 1970, at about 9 o’clock A.M. a Mrs. Eileen Burke, discovered a man in the living room of her home at 458 Tenth Avenue South in St. Petersburg, which was in the same general residential district in St. Petersburg. The man had a handkerchief in his hand and when asked what he was doing there stated he was “dusting off” her bedroom dresser. He also had her change purse in his hand, having picked it up from the couch in the room where she had left it. The purse contained some currency and a large quantity of change. She tried to grab hold of him but he ran out of the room and out of the house and down the street, where he escaped. Some six or seven dollars in silver was stolen. When arrested later that same day he had a large quantity of change in his pockets. Mrs. Burke testified to the foregoing facts and also identified Christie as the man she discovered in her home and living room.
The admission into evidence of the facts concerning the robbery in Mrs. Burke’s home was objected to on the ground that it related to a separate offense from that for which Christie was being tried. The State countered that the evidence was admissible under the so-called Williams Rule, Williams v. State, 110 So.2d 654, Fla.1959, in that it was relevant as showing or tending to show a common scheme, plan, design or identity between the two offenses and not merely a “propensity” to commit robberies.
The line of demarcation between evidence which is admissible and that which is inadmissible under Williams is quite often very finely drawn. Prosecutors have a seemingly irresistible proclivity for trying to bolster an uncertain case by bringing in evidence of another crime or crimes similar in nature alleged to have been committed by the same defendant on trial. The damaging impact of such additional evidence is readily apparent. And it is for this same reason that defense counsel invariably try to forestall admission of such evidence to the last ditch. So it becomes necessary in each such case to determine whether the proffered evidence of the other extraneous offense or offenses comes within the rule of admissibility set forth in Williams.
Williams laid down the rule that “evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion”. (110 So.2d text 663).
This 2nd District Court in Green v. State, Fla.App.1966, 190 So.2d 42 (followed in Winkfield v. State, Fla.App.1968, 209 So.2d 468) endeavored to analyze Williams in the light of the many previous Florida cases on the point in question; and in the course of our opinion in Green we said—
“ * * * as we read Williams, the essential characteristics of evidentiary ad *607 missibility have not been materially altered. Evidence of other offenses which was admissible before Williams has been generally held admissible since Williams, and will undoubtedly continue so to be held in the future; and vice versa as to inadmissibility.
We analyze Williams to mean that evidence of other offenses is admissible if—
—it is relevant and has probative value in proof of the instant case or some material fact or facts in issue in the instant case; and
—its sole purpose is not to show the bad character of the accused; and
—its sole purpose is not to show the propensity of the accused to commit the instant crime charged; and
—its admission is not precluded by some other specific exception or rule of exclusion.
Thus, evidence would now be admissible as meeting the foregoing tests flowing from Williams which, prior to Williams, was held admissible under one or more of the then recognized exceptions to the then general rule of exclusion. Examples are: where such evidence of another or similar crime is admissible to prove identity, Thomas v. State, 1938, 132 Fla. 78, 181 So. 337; Kennedy v. State, 1939, 140 Fla. 124, 191 So. 193; Licht v. State, Fla.App.1963, 148 So.2d 295; or to prove motive, pattern or intent, Hutchinson v. State, Fla.App.1958, 102 So.2d 44; Shargaa v. State, Fla. 1958, 102 So.2d 814; or to show a common scheme or design, Talley v. State, 1948, 160 Fla. 593, 36 So.2d 201; or to show guilty knowledge, Langford v. State, 1894, 33 Fla. 233, 14 So. 815; or where it is impossible to give a complete or intelligent account of the crime charged without referring to the other crime. Nickels v. State, 1925, 90 Fla. 659, 106 So. 479; or where it is part of the res gestae, Kennedy v. State, 1939, 140 Fla. 124, 191 So. 193; or where it tends to disprove a defense of alibi, Thomas v. State, 1938, 132 Fla. 78, 181 So. 337; or to disprove unlawful entrapment, Ybor v. United States, 5 Cir. 1929, 31 F.2d 42; or to disprove a defense of accident, mistake or inadvertence, Andrews v. State, Fla.App.1965, 172 So.2d 505; Talley v. State, supra. Evidence tending to prove the various foregoing elements was held to render admissible as exceptions evidence of independent crimes in the respective cases cited, and such evidence would undoubtedly meet the tests now prescribed for relevancy in Williams.” (Emphasis in text).
In the 3rd District Court case of Franklin v. State, Fla.App.1969, 229 So.2d 892, it is stated that:
“All evidence, including evidence of other criminal acts, * * * is admissible if it is relevant to a factual issue in the case unless its sole relevance is to prove propensity to commit a crime.
% ‡
It is elemental that a defendant cannot be convicted of having committed a particular robbery solely by showing that the defendant committed other robberies. But he could be convicted by a showing that there is some relationship, similarity, some common denominator between the robbery the defendant is being tried for and other robberies.”
Applying these tests to the facts in the case sub judice we are persuaded to the view that the evidence as to the robbery of Mrs. Burke’s home was properly admitted. Both robberies occurred during the morning hours in broad daylight on successive mornings. On both occasions the robber entered a closed door, instead of through a window, and left the premises the same way by backing out through the door through which he had entered. In both offenses the only thing stolen was money from the billfolds or purses of the women residents. Nothing else in either house was taken. In both offenses the identity *608 of Christie, a gray haired man, was established by sworn testimony of the women residents whose homes were robbed. In both cases Christie even escaped in the same manner by running away on foot instead of using a means of vehicular escape. When Christie was apprehended in the immediate area where the second offense occurred a quantity of change was still in his pocket. The modus operandi of the two offenses is strikingly similar, practically identical.
A fair consideration of the foregoing facts points to the admissibility of the other-offense testimony concerning the Burke robbery as showing a common scheme, system, or general pattern of criminality of the two offenses.
There is one element concerning the two robberies, however, that has seriously concerned us in disposing of this case. That is the fact that the Burke robbery occurred after the Steitz robbery and not before. In practically all the Florida cases we have researched concerning the general question of admissibility of separate-offense evidence the other offense had allegedly occurred prior to the primary offense for which the accused was being tried. Mahone v. State, Fla.App.1969, 222 So.2d 769; White v. State, Fla.App.1969, 218 So.2d 484; Gagnon v. State, Fla.App.1968, 212 So.2d 337; Jenkins v. State, Fla.App.1968, 208 So.2d 276; Bogan v. State, Fla.App.1969, 226 So.2d 110; Blackburn v. State, Fla.App.1968, 208 So.2d 625; Reed v. State, Fla.App.1969, 224 So.2d 364; Flowers v. State, Fla.App.1969, 222 So.2d 786; Avis v. State, Fla.App.1969, 221 So.2d 235; Coppolino v. State, Fla.App.1968, 223 So.2d 68; State v. Wadsworth, Fla.1968, 210 So.2d 4; United States v. Brock, C.A.Fla.1969, 408 F.2d 322; Davis v. United States, C.A.5 1969, 413 F.2d 1226; Miller v. United States, C.A.5 1968, 397 F.2d 272; United States v. Restrepo, C.A.5 1969, 417 F.2d 927.
But while evidence of extraneous offenses has been generally restricted to such offenses occurring prior to commission of the main case on trial, there have been a few exceptions. Thus in Weinshenker v. State, Fla.App.1969, 223 So.2d 561, the other offense was allegedly committed 18 days after the instant offense. In Winkfield v. State, supra, the extraneous offense was committed 30 days subsequent to the offense being tried. And in Talley v. State, 1948, 160 Fla. 593, 36 So.2d 201, reviewed at length in Williams, there was evidence of five other offenses by the accused, three prior to the date of the main offense and two subsequent thereto. In these latter cited cases evidence of the extraneous offenses was not held to have been reversibly admitted.
We look, however, with jaundiced legal eye at subsequently committed extraneous-offenses. We do not hold it to be reversible error in the instant case mainly because it was so imminent to the main offense in point of time, location, and general modus operandi as to afford a reasonable and rational relevance to proof that Christie was the Steitz robber. See 22A C.J.S. Criminal Law § 683, p. 741.
Other points raised on appeal have been considered and found to be devoid of merit. So the judgment of conviction is—
Affirmed.
HOBSON and McNULTY, JJ., concur.